Good morning, Your Honor. I'm Ronald Foreman for David Mastany. As the Court knows, there are two matters here, so I don't know whether you want to have argument both of them at the same time or go one at a time and then save the second appeal. Probably better address everything you want to address while you're here. I think the first issue, Your Honor, is the de novo review of the contract provision found in the agency agreement. I believe that we can concede that this is a form selection clause, but the question really becomes, is it a mandatory form selection clause consistent with the Mineto-Ferro-Gucci case, or rather, is it a permissive form selection clause consistent with the Hunt-Wesson v. Supreme Oil decision? And that's found in the excerpts of the records. It's our position, of course, that this is a permissive form selection clause and that the trial court, district court, was wrong in two regards. First, in finding that all the matters should have been litigated in Denmark, and then secondly, what I believe to be the case of first impression for this Court is the tort conduct that took place after the term of the agreement gets pushed back into the scope of the form selection clause and the parties are told, go litigate that in Denmark also. Interestingly, and I don't know if this Court is aware of it, we did make a motion to continue this oral argument because the Denmark case was tried, and that decision, the judgment, will be rendered on the October 27th. Does that make to these issues, though? I believe it does. I believe because we will then find out whether on the tort claims that this Court said litigate in Denmark actually got litigated. I went to Denmark. I was actually called a witness. It was an interesting matter. And some of the evidence that's in this case was the exact evidence. How does that help us in determining the form selection clause issue? Well, it certainly helps in one regard. Who's the prevailing party, which is the second appeal that we're going to be arguing? On the form selection clause, I believe this Court could – it may be moot in part, but the Court could remand and send back to the trial court and say, no, the contractual arguments under the agency agreement correctly can be litigated in Denmark, or the tort claim should remain here. Or the Court could say the following. You were wrong in sending the case to Denmark in its entirety because this was permissive language in that the form selection clause, which reads – We can do any or all of those, regardless of what happens in Denmark. Pardon me, Your Honor? We can do any or all of those, regardless of what happens in Denmark. Well, I think that the prevailing party issue in the second appeal on the issue of attorney's fees will certainly be instructed by the judgment in – Well, I don't agree with you, but go ahead. Then the second issue becomes that if there is going to be any doubt, that the doubt is resolved in favor of the nonmoving party, and that's consistent with the Schneider case, which is found in the moving papers. Other than that, because it is a de novo review, it's really up to this Court to simply make that determination, whether it's permissive or mandatory, and whether the district court erred. We believe the district court erred, particularly with respect to the tort claims. In Minetto-Ferro, which is the case that is most similar, the tortious conduct took place during the term of the agreement. Here, the term of the agreement expires, and there is then tortious conduct. The argument by the appellee is, well, they, Moss and the plaintiff appellant, filed his action in a short period of time after the duration of the contract, and therefore it shows that it's conduct that really should be governed by the form selection clause. What paragraph of the agreement has the form selection language? It's paragraph 22, Your Honor, of the agency agreement. It says the construction validity and performance is governed. That's correct. It's governed by the laws of Denmark. And how does that compare to the mandatory language in the cases that have found mandatory? I think the way the way I'll answer it by explaining the cases that found it wasn't mandatory. In Hunt-Western Foods, in the progeny of that, it says to be mandatory, the language has to say sole jurisdiction, limited to the jurisdiction, or there has to be a venue selection in the form selection clause. And those are, and that language is absent here. What language constitutes a venue selection? When it says that the only place that the matter may be tried or the sole place that the matter may be tried is in the venue that's selected. And I understand it's like splitting hairs, Your Honor, but the court must look. They're both Ninth Circuit cases. Hunt-Western Foods is the case that talks about the permissive language, and then Minetta-Ferra, which is the case that discusses the mandatory language. Counsel, pardon me for interrupting you, but before we get any further on this distinction between mandatory and permissive, in your brief statement of issues presented, it seems to me that you focused solely on the district court's application of the forum selection clause to dismiss your tort causes of action. And the abrogation of the clause by the subsequent agreement. My point is that, haven't you waived the argument you're making? I don't think so, Your Honor, because I think it's a sub-issue under our first issue, in that the court, if the court erred in how it interpreted the language, then that solves the riddle of our first issue. The sub-issue is whether that mandatory or permissive language, then the court erred in, in fact, in interpreting the clause. I wasn't able to find any real argument on mandatory versus permissive in your brief. I understand, Your Honor. But in preparing for the argument, as I go back and I look at this and I do see that issue, and I understand what the Court is saying, I find that that is the sub-issue that decides, is the determinative issue of the issue the Court just asked me about. I thought you raised it in pages 11 through 13 of your brief. Thank you, Your Honor. And one of the worries about all of this being raised is whether there is a surprise in the part of the Respondents in it, they dealt with it directly on pages 12, 26, and 28 of their brief. Thank you, Your Honor. At least, that was my observation. Thank you. Thank you. Counsel, I was curious. You told us about two cases, Hunt, Wesson, and what was the other one? The two cases, Your Honor, Minetta-Faro, which is Minetta-Faro v. Gucci found it 858, Fed Second, 509. And that's in the index. The second one's in the excerpt for the records, and that's Hunt, Wesson, Foods. Where is it in the excerpts? It is in the, unfortunately, the first set, we're in the page, we're not based in that number, I apologize. It's in the plaintiff's opposition to the motion to dismiss. It's not paginated? The first appeal's not paginated, the second is. It is found in some detail, Your Honor, in the footnote, footnote number one on page two. This is, this is all the cases that show mandatory versus permissive language, and this is the memorandum of points of authorities in the opposition to the motion to dismiss in the excerpt for the record. Yeah, but that should be, if that's a pivotal case, it should be cited in your brief. If that's something that you think controls the outcome of this appeal, it should not be cited in your brief. It shouldn't be buried in a footnote in an exhibit that's not even paginated. It should be in the brief that you submit to us. I understand, Your Honor, I apologize. However, that is, these have seemed to be the two cases in the Ninth Circuit that are determinative of this issue. And since it is, in my view, a de novo question for this Court, I would urge them to read both, and then we're going to have to reconcile this issue that you've asked. What is the language that makes it a venue selection that precludes a filing in some jurisdiction other than that in the Foreign Selection Clause? And that's addressed in those two cases. It's our position, Your Honor, that this was not the mandatory language. It was permissive, and the case was properly filed in the Ninth, the U.S. District Court. And then the second issue, which doesn't, doesn't relate to that, is this other issue, though, which is the first impression issue of tort conduct after the termination of the term of the agreement. And that matter could certainly have been severed, and those tort claims could certainly have been tried in the district court. What authority do you have for the proposition that a Foreign Selection Clause is revoked by the termination of the agreement in which it contains, it is contained? There is no authority that's revoked. There's a series of cases that talk about the survival after the termination of the term, but then we come down to what was the intent of the parties when they wrote the agreement. The only case that I could find that talked about tort conduct is, of course, the Moneto-Ferro, which I've mentioned several times. But that tort conduct was during the term of the agreement, not afterwards. The courts have analogized to arbitration provisions saying that after agreement has terminated that an arbitration provision may survive the termination of the term of the contract. But that would be something the parties contemplated at the time of making of the contract. Certainly, the parties don't make a contract with the idea that, oh, there's going to be tort conduct, and by the way, if there is tort conduct that occurs after the termination of the term, it's swallowed up within the Foreign Selection Clause. And the example we use, while it's absurd, proves it, which is if the two parties got together and one of them punched the other one in the nose post-termination term of the agreement, is that a tort that takes place and is swallowed up by the Foreign Selection Clause, or is it at the location of where the conduct occurred? It's our position it's that, where it occurred. Now, I'm going to move on. Ginsburg. There's no Ninth Circuit case that helps us. That's correct, Your Honor. That's correct. Ninth Circuit. We do have a case from the D.C. Circuit, the Mora v. Palandreau case, which disagrees with you. I'm sorry, Your Honor. It's Mora v. Palandreau, 216 Fed 3rd, 1119, at 1123 D.C. Circuit case. The Foreign Selection Clause is a distinct contract in and of itself. And I apologize. I notice I reminded myself this wasn't cited in the briefs. We found it. It's not binding on us, but it certainly does not agree with you. I'm sorry, 216 Fed 3rd? It is 216 Fed 3rd, 1119, D.C. Circuit, 2000, at 1123. I apologize, because there's no reason for you to know about it. Well, while we're exchanging cases, I have two that may be instructive that were also not cited that relate to this issue. Counsel, it does not help us to resolve this case when we get citations at the time you're arguing. We don't have an opportunity to look at those cases, to compare them, you know, to the arguments you're making. It's very difficult for us to do this on the fly. So if these cases were important, they should have been in your brief. I found two of them at 5 a.m. this morning, Your Honor, preparation. But having said that. Advanced preparation. Oh, I understand that. What I would suggest, Your Honor, is something which I was going to save to the prevailing party issue, and that is under Federal rules of appellate procedure 40, this Court can fashion any order not inconsistent with the laws. I understand it. I would urge this Court to, if we submit on oral argument, but the matter not be submitted, and that we wait for the judgment of the Danish court and we submit that to this court, I can also give the court the two cases by letter. The point being this. The district court, I believe it's Judge Jenkins, who is now the attorney or probably the judge in the third case that was filed, if the court looks at the amended statement of related cases, you may know that Winnie Papier filed another lawsuit in the district court in March of this year. Of course, that belies their position that everything had to be litigated in Denmark because they've now chosen to file a third action here in the district court. Judge Jenkins, the trial judge, has ordered that everything be stated in that case pending the resolution of the judgment in Denmark. Now, the case has been tried in Denmark. We were under the impression from the Danish court that we would have had the decision already. Danish court has notified us they're going to render the decision on the 27th of this month. Is there an appeal process for that as well? Pardon me? Yes, there is, Your Honor. But there's, as I understand it, it's a little more expeditious. And I don't mean it in a disrespectful way. It's just more expeditious. But it won't be final until the appeal period runs. No, but it certainly might be instructive on this prevailing party issue. May I address that and reserve a couple of moments on the issue of the attorneys' fees? Do you believe that if the Danish court rules in your favor that that's going to have an effect on us? I think it shouldn't have fallen away. What the trial court or what the court has said is that I, the district court, retained jurisdiction for making a determination under ancillary powers of the award of attorneys' fees. I've dismissed. They prevail. Therefore, you get attorneys' fees. That's the position. I think that piecemeals it out, though, because they didn't win the case. They won a motion. You think about it. They changed venue from place A to place B. That's a victory for them. What if there's now a motion to compel arbitration or a motion for non-suit or a motion for summary judgment? You could have multiple winners. We're not deciding all the problems between you and your opponent. We're deciding did your opponent prevail in this case. That's all we have to decide. We'll find out that answer momentarily, because on the 27th, we'll have a judgment that will indicate who won the trial. But will that be res judicata upon us? I don't know. It might be instructive whether it's res judicata. It's the same parties. It may be the issue. The foreign judgment is res judicata upon us. Pardon me? A foreign judgment would be res judicata on us. Not res judicata, but to the extent that this Court wants to give comedy to it, it can. Okay. But backing up, Your Honor, let me address. The district court, this is not statutory where it's remanded to a different place, and there's a lot of statutes that say when it's remanded, there's the award of attorney's fees. The authority that we've given you is it's a contractual relationship. And in a contractual relationship, the Court has discretion on whether it awards attorney's fees. And if this Court were to find that the trial court properly exercises discretion  to award attorney's fees, and most interestingly, the district court said that the $79,000 was excessive, and then says, but it's reasonable. And the trick is in the math that the Court gave to us. In the excerpts of a record, Your Honors, at page 0148, the district court said, based upon the unredacted fee list, that Plank has spent 80 hours drafting the motion to dismiss and related documents. It goes on to say, Plank has spent 44 hours drafting the motion for fees and related documents. That's 124 hours. That's spent, that's at pages 0148 and 0149. But the district court awarded 100 percent of the fees. 100 percent of the fees is for about 240 hours of work. I can't square the math. I think that this Court should remand to the district court, because if the district court intended on awarding fees for 124 hours, then why did they award fees for over 240 hours? I think the $79,000 is excessive. I think that what the Court meant to say here was that they're going to get the 120 hours of work, and that's about half of the $79,000 that was actually awarded. Counsel, did you want to save some time for rebuttal? I did, Your Honor. All right. Thank you. Good morning, Your Honors. I am Colin Pierce. I represent the appellee in this case, Winnie Papier, a Danish company. Your Honors, I'm going to address both of the appeals at the same time as well. It's my position that this Court should affirm both orders, both decisions of the district court, first on the form selection clause issue, because the Court properly found that the form selection clause, paragraph 22 of the agency agreement, is a valid form selection clause. Next, it looked at whether enforcement of the form selection clause would be unreasonable, which is the standard established in the Supreme Court Bremen case. The Court found that enforcement would not be unreasonable because the plaintiff, Mr. Mosny, the appellee in this case, was not able to show that the agreement or the form selection clause was procured by fraud. He also failed to show that the form selection clause was contrary to the public policy of this jurisdiction. A couple of questions before I go too far. Do you agree that the form selection clause, the argument that it may or may not be permissive, is sufficiently specified in the brief as not to be waived? No, Your Honor. Actually, I was going to address that after the three points, but I'll jump to that right now. That actually, Your Honor, was waived on appeal. At the district court level, in opposition to the motion to dismiss, as Mr. Foreman pointed out, Mr. Mosny did cite the Hunter and Wesson case in a footnote. He argued that the – he did raise the argument before the district court that the phrase or the form selection clause was permissive. The district court rejected that in their decision. Instead, the district court found that the parties voluntarily agreed to submit to the jurisdiction of the Danish courts. That's a different issue, though. Submitting to the jurisdiction doesn't mean exclusive jurisdiction. That's the point. Your Honor, the – I concede that the district court did not specifically talk about mandatory versus permissive, perhaps because it was a minor issue raised in a footnote. The court did say – Let me ask you this. Where did the district court reject the Hunt-Wesson argument, the permissive versus mandatory distinction? Where did the district court, in its opinion, address that? Yes, this is a – the opinion that the order granting defendant's motion to dismiss is an excerpt from the Record 10 at page 5. Again, there's no base numbers. Page 5, under the legal analysis, it discussed whether paragraph 22 of the agency agreement is a form selection clause or a choice of law provision, which was actually the gist of Mr. Mosny's argument. His argument was not specifically that this is mandatory or permissive. His argument was this is a choice of law, not a form selection clause. In his opposition to our motion to dismiss, he identified the issues and the challenges to the form selection clause. Number one was this was not – this was a choice of law. Number two, it doesn't apply to the tort claims. So, again, he didn't focus on the mandatory versus permissive. But getting back to the opinion, the Court found that it is a valid form selection clause which binds the parties to the laws in the jurisdiction of the Danish courts. That's the point. My question I ask you is where did the Court reject the Hunt-Wesson analysis and discuss the permissive-mandatory dichotomy? It – it – pages 5 and 6, it talks about contract interpretation. It finds that the phrase is free from ambiguity. It is clear from the plain meaning of paragraph 22 that the parties intended to choose the laws of Denmark and the Danish courts as a form for the dispute. But it would be fair to say that the Court did not delve into the distinction between permissive clause and – and mandatory clause. Would it be fair to say that? I concede they didn't mention Smith and Wesson or specifically use permissive versus mandatory. Well, we're bound by our jurisprudence in the Ninth Circuit unless we were an embanked court, which we're not. Hunt and Wesson and Manetti-Faro say that unless it's sole jurisdiction – that's Hunt and Wesson – unless it's the court of Florence, which is only one, right, and Manetti-Faro, regardless what the intent of the parties might otherwise be as objectively manifested in the contract, it is not a valid venue selection clause. Your Honor, the problem with – How do we get around those two points? Here's how you get around it. Number one, it's not an issue identified on appeal. As you pointed out yourself, Your Honor. But he did cite Hunt and Wesson. Not on appeal, Your Honor. If you look throughout his briefs, he never cited – He cited Manetti. He didn't cite Manetti for that proposition, though. He identified the issues on appeal. The only issues on appeal with regard to the form selection clause are, number one, did the form selection clause apply to tort claims that arose after the agency was terminated? Number two, did the court err in dismissing all of the tort claims? And number three, did the letter of intent, this later agreement, supersede the form selection clause? Where are you reading from? I'm reading from his opening brief. What page? And I was paraphrasing, actually, Your Honor. His opening brief, page 2, issues presented. Okay. That's a little different than what you were saying. Yeah, but you're right. It doesn't have whether or not the form selection clause was sufficiently specific to be mandatory. And Judge Nelson pointed out that pages 11 through 13 of his opening brief, he does mention the mandatory versus permissive, but that's in the context of whether the form selection clause applies to the alleged torts that occurred after the termination. And that's applies, that's application of the form selection clause in which you're bound by an abuse of discretion standard. And again, in that same argument, he does not talk about the Hunt v. Wesson case. I also point out, Your Honors, that even if he had raised that issue, even if you think that's something that you can look at, the Supreme Court, I know what Minetti says, Your Honor, but if you look at what Bremen says, where this language came from, if you look at the very last line of the Bremen opinion, after they've gone through the whole discussion about whether, you know, what policy guides form selection clauses, what the benefits of it, how it's necessary for international commerce and how you're supposed to enforce them unless they're unreasonable, at the very end, they use the word mandatory. And that's it. They don't say, they don't talk, the Bremen case itself doesn't talk about the mandatory versus permissive. Now, I grant you that cases such as Minetti-Ferro have carved out an exception for certain form selection clauses where they find the language is somewhat permissive. But that is not the guiding principle. The guiding principle under Bremen is that the form selection clause is enforced unless it's unreasonable. And that's exactly the analysis the Court did here. I also submit that if you were to use our language carefully, Hunt v. Wesson and Minetti-Ferro say a form selection is permissive and does not become a venue selection unless there is a language of exclusivity as to the venue. I think that, Your Honor, I would submit that that is not exactly what they say. They say you look at whether it's permissive versus mandatory, and there's various factors they look at. But mandatory in the sense of venue selection requires either sole jurisdiction as Hunt v. Wesson or court of Florence. If that is correct, Your Honor. If that is the jurisprudence of the Ninth Circuit, we are not empowered to change it. Your Honor, I submit that my other point is that even if you were to look at this issue, even if he had raised it on appeal and he hadn't waived it, that you could find that the language in this case, paragraph 22 of the agency agreement, is in fact mandatory. And that's because the look at the Sterling Forrest case, which recites the same language that's cited in our papers, the Ninth Circuit case, it finds mandatory a phrase where the parties agree, agree the jurisdiction shall be in California. That is identical to the statement that the parties in this case accept the jurisdiction of the court system. What's the citation of the Sterling Forrest case? I'm sorry. It's a Fourth Circuit case, Your Honor. It's a Fourth Circuit case. That changes the water on the beans. I also look at the Dockside. The Dockside case, Your Honor, is a Ninth Circuit case. Right. But that is a Ninth Circuit case.    Tell me about that. That's a Ninth Circuit case. That's a Ninth Circuit case. Tell me what language in the Dockside case changes what I've said about the. There was a specific reference to a specific county in Virginia. I grant you that. A specific county in Virginia? How is that different from the specific court or the specific country of Denmark? Because they have county courts in Virginia. Your Honor, I submit to you, though, that if you look at the language in this case and in this clause, the parties agree to the jurisdiction shall be in Denmark. Hutton-Weston actually. That says shall be or is. No, it says agree to the jurisdiction. See, Hutton-Weston spoke about shall. I submit to you that that's a passive statement. You know, jurisdiction is going to be, could be here, could be there. It's something different to say in our case that the parties agree to the language, accept the jurisdiction. Accept the jurisdiction. And that is, that is, that's not passive. They accept the jurisdiction of the Danish courts, but it's not necessarily that they're precluding jurisdiction in other places where jurisdiction may be found constitutionally. I think you're reading, that would be reading language in the agreement that's not there. If they're agreeing to the jurisdiction of Denmark and then somebody were to turn around and say, well, that doesn't mean they have to go to Denmark, they can go anywhere, then why bother putting that phrase in there? Why do they, you can't? Because you're bound by the Constitution in terms of personal jurisdiction. But you accept it because it might be unusual to go to the Danish courts if you're in the United States. So I could see why you would put that in there, to make sure that the jurisdiction of the Danish courts is, is acknowledged, but that doesn't make it exclusive. That's the problem. If it said, it would be different if it had said shall. But the fact that it said the parties accept, that is an active statement, not a passive statement such as shall. An active statement that they accept. If somebody accepts something, then they take it. They, they get it. It's something that is firm and bound. And, again, there's the, even Smith and Hunt and Wesson and Menendez-Ferrer, they don't say that to be valid, a form selection clause has to say, you know, something specific. They look at mandatory versus permissive, but there's no magic words. There's no bell that you have to ring. Kennedy. But there is. I mean, they're talking about it can be valid, but it can, it is not exclusive unless it has the magic words sole or it shows one county. The sole can be, the sole can be many things, though, Your Honor. The sole doesn't have to be the exact same language that is found in Menendez-Ferrer. It doesn't have to be specifically the, the county in Virginia like the Dockstader case said. It has to raise a fair inference that. A fair inference. That, that one, one exclusive venue is being selected. And another reason, correct, and that's why this Court, the district court in this case, looked at that. They looked at the argument. I mean, he did raise the argument. I grant him that. He did raise the Hunt and Wesson case. But the Court said it's, it is a, it is a valid. The Court didn't analyze that issue. Let me ask you one more thing. What is our scope of review as to Judge Hamilton's determination that the plain language of the contract requires the case to be tried in Denmark? Is it de novo, or is it? The, the interpretation, and it's, I believe it was Magistrate Judge James that. Pardon me. The interpretation of a contract, which is, again, not an issue on appeal today, is a de novo review. The application of the, of the clause, which is the issue raised at pages 11 through 13, is abuse of discretion. And the, and Judge James herself said in her opinion at excerpt of the record 10 that her interpretation of the contract is a matter of law, which is de novo. But again, the only issues on appeal are the application of the form selection clause, and that is abuse of discretion. And I, I. But we can't apply it unless we first interpret it, right? And Judge James did that. Your Honor, we could have had this discussion. We could have briefed this issue if he had raised this issue on appeal. And that's what, what's somewhat frustrating is we're having this dialogue about what Smith and Wesson say and, and what Dockseider say. That's not in his brief. That's not an issue on appeal. There's nowhere does he cite these cases. And it's only in the application to the tort claims, which is a totally different issue. That's whether the issue at pages 11 through 13 is whether the form selection clause, which has already been found to be valid by Judge James and not challenged by Mr. Mosny, whether that applies to tort claims. And the standard there is whether the tort claims are intertwined with the contract. That's what we brief. Kennedy Farrow deals with that. Correct. And we use, we cite Menetti-Farrow for the proposition that the tort claims are covered by the form selection clause. Menetti-Farrow found that the form selection clause was valid, enforceable, no different than Judge James did in our case. This would be, you know, I've heard trial by ambush, but this would be appeal by ambush for, you know, Mr. Forman to come in here and say, oh, I found, I finally found, I revisited my briefs and realized I should have argued this at 5, you know, at 5 a.m. this morning. That's not the way this panel should operate. Okay. Well, let's move to something that was argued. Okay. Let me. What makes Mosny's fifth claim, tortious interference with the employment contract with Jack Kaplan, fall within the scope of the form selection clause? You have to look at, well, first of all, the fifth clause of action incorporates prior language in the body of the complaint. That's, you know, throughout the body of the complaint, the factual section, there's every paragraph has a reference to the agency agreement that says that Mooney-Papier did this. They contacted customers. They solicited orders, all in violation of the agency agreement. And so that language is incorporated into the fifth clause of action by reference. And also, whether the fifth clause of action is actionable still requires you to look at the contract. Look at the agency agreement, the relationship between the parties to determine whether the contact is unlawful. As far as I know, in California, the act of contacting somebody to interfere with a contract by itself is not improper. You have to have some tortious conduct at the base of the contact. Whether the underlying conduct is tortious depends on whether there's a violation of the agency agreement. Are you familiar with the Minetti-Ferro case? Yes, very much so, Your Honor. How would you? How would you apply it in this case? I think it's almost identical, Your Honor, because there you had, again, you had an agent, you had a distributor from a foreign company who got into a dispute and he and there was allegations that the foreign company was basically disregarding the agency agreement or disregarding the distribution agreement and going off and doing and making contacts with other people, with third parties, and they were soliciting orders. It's really the same situation as in this case. And the court there said you have to look at the contract. The relationship between the U.S. citizen and the foreign company is defined by the contract, and you have to look at the contract to find out whether the conduct is actionable, which is precisely what we have here. As I'm running out of time, I want to jump briefly to the attorney's fee issue. There's two points I want to make there, which is that the district court determined that we prevailed because we succeeded in dismissing the case. We cited extensive authority in our opposition brief in that matter on Appeal 16287, which talks about this long line of cases that says that if you succeed in what you set out to do, if you win, if you end the case, there's all these factors they look at to decide whether you've prevailed. And the court there said we just got the case dismissed. We prevailed. Now, what happens in Denmark has absolutely no impact on that. It doesn't change the fact that we dismissed the complaint at the district court level. I also point out that this action in Denmark, which Mr. Foreman referred to numerous occasions, that was pending shortly after he filed his action here. When we went to court on the motion to dismiss, the Danish action was pending. And if it was somehow determinative of the outcome of this case and determinative of who prevailed, then Mr. Foreman and Mr. Monson should have made the court aware of it. They could have made a motion to stay. They could have made they could have brought that case to the attention of the court. They didn't. They elected to sue in this district in violation of the Foreign Selection Clause. They were wrong, and we prevailed. Has California courts addressed the question of dismissal and prevailing party status? I believe so, Your Honor. I believe that there is especially in Civil Code Section 1717 talks about dismissal. That's the California attorney fee statute. It says it talks about prevailing party, and one of the standards is if you succeed in getting the case dismissed. How do you make the statement by Judge James that the amount of time spent on research was possibly out of line with a simple motion to dismiss? Does that? Then she turns around and says that there were several complicating factors, including the federal treatment of Foreign Selection Clauses and international law principles, which established that they were reasonable. In fact, what she really says is that at first glance the fees appear unreasonable given the amount, but then when she looked at the actual bills in her second opinion, she said they were reasonable, and she listed a number of factors, including the fact that the rates were in line with other attorneys in the area. The court couldn't find, with three minor exceptions, any unnecessary or duplicative billing entries. Again, she said this was a complex issue involving international law. Most of the research was done by lower-billing associates, and finally the papers were thorough and well-written. So she listed the factors. And again, in terms of the reasonableness of the fees, the way I look at it is we submitted evidence for our fees. The other side didn't submit evidence to challenge the amount of the fees, and the judge listed her reasons. And that is valid, and that gives us the right to the fees. And she has discretion to determine the reasonableness of the fees. The standard is abuse of discretion. District courts or courts of appeal commonly defer to the discretion exercised by the judges who are there and actually read the papers and hear the case and are in a position to judge the appropriate amount of the fees. So I would urge you, Sam, I'm almost out of time here. Unless you have further questions, I would urge you to affirm both decisions. There's no need for remand. There's no need to delay at all, because we won at the district court level. They sued in the wrong court. There's an attorney fee provision, and the case should end here. All right. Thank you, counsel. Thank you, Your Honor. Roboto. Yes, Your Honor. I didn't get through a number of issues. The one issue that's problematic, as counsel remarked, regarding the fire-pending action in Denmark, it was never served at the time that these matters went forward. It was a district court. We had no knowledge of it at the time that we filed our actions. So that's a factor. With respect to the Court's question regarding the waiver of the issue or mandatory versus permissive, one, jurisdiction is never waived, number one. Number two. It's not jurisdiction. Well, who has jurisdiction in California or Denmark, I would contend. That's not the Court's jurisdiction. All right. That's not a jurisdiction issue. But then within the issue raised on appeal, issue number three, whether the district court prejudicially erred when it did not apply the forum selection clause of the 2002 agreement under which the parties agreed all disputes would be resolved in California. And then as pointed out, we ---- But that's a different agreement. Pardon me, Your Honor? That's a different agreement. That's not paragraph 22 of the 1999 agreement, is it? You're correct. But in the argument ---- What you're saying is we had a different agreement and that modified paragraph 22. That's not an argument that whether paragraph 22 is mandatory or permissive. You're absolutely correct. But in the argument that was made, we certainly addressed and we point out on those pages, Your Honors, 10 through 13, the mandatory and permissive language and used the argument mandatory. In the brief, it's not set out as an issue.  I understand. I understand it couldn't have been better presented. No. And it's only argued with relation to whether the 2002 agreement modifies the prior agreement, paragraph 22. It doesn't talk about whether paragraph 22 is valid or not under our jurisprudence. I understand. The other issue that was talked about was the issue of the State court tort claims. They are ---- those State court tort claims exist whether there was an agency agreement or not. If David Mastany was doing business with his agent, Jack Kaplan, and a third party came along that had no agreement with Mr. Mastany and interfered with that contract, that's a tort. If a third party came along and disparaged Mr. Mastany's business, that's got nothing to do with an agency agreement. If a third party came along and violated Mr. Mastany's rights under ---- But you're not suing a third party. You're suing a first party. Pardon me, Your Honor? You're suing a first party. You're not suing a third party. That's correct. But we could sue. And so the question is, does the scope of the contract permit the actions which your opponent, first party, took? I just ---- And if so, then you don't have a third party interference with contract rights because you don't have that contract right. I disagree to this extent. If a third party comes along, which happens to be, we can call it Winnie-Papier, and Winnie-Papier violates B&P Code section 17-200, they can do that without any agreement with Mr. Mastany. That's a tort claim. That's a different case. I'm sorry? That's a different case. No, no. No, Your Honor, that's one of our causes of action. There were multiple tort causes of action, trade disparagement, a B&P Code section 17-200. By whom? By Winnie-Papier. That's correct. But Winnie-Papier could have done that without an agency agreement, and we would have had a right to sue them. So what I'm suggesting under Minetti-Ferro, there's nothing that requires that those tort claims come within the ambit of the form selection clause. Mastany could have filed in the district court. We understand your argument, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: D.W. Nelson, Rawlinson, Bea